IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ANTHONY GREEN, SR., | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CV573 |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS COUNTY NEBRASKA, and | ) | MEMORANDUM AND ORDER |
| ROBERT HOUSTON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the defendants' Motion for Summary Judgment (Filing No. 24). Plaintiff, Anthony Green, has asserted claims of employment discrimination under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act, 42 U.S.C. 2000 *et. seq.* The plaintiff failed to respond to the defendants' motion for summary judgment, however, after reviewing the pleadings, briefs, and evidentiary material the court will grant summary judgment in favor of defendants.

## FACTUAL BACKGROUND

Plaintiff commenced employment as a Correction Officer I at the Douglas County Department of Corrections in July of 2003. Defendant Douglas County Department of Corrections is an agency of Douglas County. Defendant, Robert Houston, was Director of the Douglas County Department of Corrections from approximately September of 2003 through February of 2005.

The Department houses both male and female inmates in separate housing units. The Department has a policy that only female officers may guard female inmates. This policy is based on Neb. Rev. Stat. § 47-111, which states in relevant part that:

> In every county where there is a female prisoner, twenty-four hour supervision shall be provided by a matron appointed by the county board, whose duty it shall be to have entire charge of the female prisoners, and the board may also in its discretion appoint such matron when there is a sick prisoner or one that is a minor under the age of sixteen.

Furthermore, the Nebraska Jail Standards Board has adopted and published the Nebraska Minimum Jail Standards for Adult Jail Facilities, Title 81 Regulations, which state in relevant part: "004.02A Female employees shall provide around the clock supervision of all female inmates housed in a jail facility." The Nebraska Commission on Law Enforcement and Criminal Justice is the agency of the State of Nebraska that is responsible for establishing the Nebraska Jail Standards Board pursuant to Nebraska revised Statute §§ 83-4, 124-83-4, 134.

The terms and conditions of plaintiff's employment were also covered by the provisions of a collective bargaining agreement between Douglas County and Fraternal Order of Police (FOP), Lodge No. 8 (July 1, 2003 to June 30, 2006). Article IX, Section 2, of the Union Contract grants the Department the right to establish a minimum number of female officers needed for each shift stating: "[a]ll shift bidding and days off will be controlled by classification seniority except where Nebraska State Law and Nebraska Jail Standards dictate staffing of female officers." (Filing No. 26 Ex. 6).

On or about November 28, 2004, plaintiff submitted a shift bid request form for the shift bid effective January 2005, requesting to work shift A first, and shift B second. (Filing No. 26 Ex. 3 at ¶ 14). But for that time period there were not enough female officers on the A shift so plaintiff was moved to the B shift to allow female officers with less seniority to take his place on the A shift. (Filing No. 26 Ex. 3 at ¶ 13-14). Due to the shortage of female officers, the Department moved the five least senior male officers on A shift, including plaintiff, to the B or C shifts. (Filing No. 26 Ex. 3 at ¶ 14). Plaintiff remained on

the B shift for six months but has received his first choice in shift assignment since July of 2005. (Filing No. 26 Ex. 3 at ¶ 14-16).

On or about February 22, 2005, plaintiff filed a charge of discrimination against the defendants with the Nebraska Equal Opportunity Commission (NEOC). On or around October 20, 2005, the Equal Employment Opportunity Commission issued a Notice of Dismissal and Notice of Rights. On December 29, 2005, plaintiff filed his complaint with this court. On August 17, 2006, this court granted plaintiff's attorney, Thomas M. White's, motion to withdraw. At that time, this summary judgment motion was pending and the court granted plaintiff an extension of time to answer the motion cautioning plaintiff that failure to file a response to the summary judgment motion may result in the granting of the motion for summary judgment. Plaintiff did not file a response to defendants' summary judgment motion.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 611 (8th Cir. 1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson*, 477 U.S. at 248).

## DISCUSSION

In his first claim, plaintiff argues that he was denied equal protection of the laws of the United States based on his gender because he was not given his first choice in the shift bid of shift A.  In his second and third claims for relief, plaintiff argues that the defendants have discriminated against him based on his sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a).  In *Tipler v. Douglas County,* 2006 WL1314328 *1 (D. Neb. May 11, 2006), Magistrate Judge Thomas D. Thalken addressed the same issues that are in front of the court in this case.  This court agrees with the reasoning and conclusions set forth in *Tipler*.

### A. § 1983 Claim

42 U.S.C. § 1983 imposes civil liability on any person who, "under color of any statute, ordinance, regulation, custom or usage of any State," deprives an individual of "any rights, privileges, or immunities" secured by the United States Constitution. To survive summary judgment, a claim under § 1983 must raise a genuine issue of material fact as to whether 1) the defendant acted under color of state law, and 2) the alleged wrongful conduct deprived plaintiff of a constitutionally protected right. *Cooksey v. Boyer*, 289 F.3d 513, 515 (8th Cir. 2002).  In order to make out a case of municipal liability against the County, Green must show that his constitutional injury was caused by a policy or custom of the municipality, the implementation of which amounted to deliberate indifference to his constitutional rights.  *City of Canton v. Harris*, 489 U.S. 378, 388-91 (1989); *See also*

4

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978).[1]

The Supreme Court "has carefully inspected official action that closes a door or denies opportunity to women (or to men)." *United States v. Virginia*, 518 U.S. 515, 532 (1996) (citing *J.E.B. v. Alabama ex. rel. T.B.*, 511 U.S. 127, 152 (1994)). "The Court [has] underscored that a party seeking to uphold government action based on sex must establish an 'exceedingly persuasive justification' for the classification." *Id.* at 523 (1996) (citing *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982). "To succeed, the defender of the challenged action must show at least that the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* at 524.

In *Tipler*, when the Douglas County Correctional Facility did not have the requisite number of female guards on duty during the A shift, a female correctional officer, Deana Tipler, was reassigned from the B shift to the A shift. *Tipler*, 2006 WL1314328 *1 (D. Neb. May 11, 2006). Tipler alleged that the reassignment was discriminatory based on her sex. *Id.* After a thorough analysis of Neb.Rev.Stat. § 47-101, the *Tipler* court found that, with respect to plaintiff's § 1983 claim, in instituting its gender based policy, the defendants had properly relied upon the state statute, the Jail Standards promulgated by the Jail Standards Board, and the Union Contract. *Id.* at *9 Accordingly, the court found and concluded that the county did not violate plaintiff's constitutional rights because "the defendants have a reasonable gender-based job assignment policy and the policy is substantially related to

---

[1] Plaintiff is suing defendant Robert Houston in his official capacity only. Under § 1983 a suit against a governmental official in his official capacity is a suit against the governmental entity itself. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Accordingly, plaintiff's § 1983 claim is solely against Douglas County.

5

the achievement of the defendants' important government objective of maintaining county jails in conformance with applicable laws." *Id.* This court agrees with the reasoning set forth by Judge Thalken granting summary judgment in favor of defendants on plaintiff's § 1983 claim, therefore, this claim is denied.

### B. Title VII Claim

Next, in plaintiff's second and third claims, he argues that the defendants have discriminated against him based on his sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a). Defendants argue that plaintiff's claims should be dismissed as a matter of law because the restrictions placed on plaintiff do not rise to the level of an adverse employment action.[2]

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Summary judgment may be entered in a Title VII action "if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999).

A prima facie case of discrimination requires the plaintiff to establish that he 1) is a member of a protected class; 2) was meeting the legitimate expectations of his employer; 3) suffered an adverse employment action; and 4) circumstances exist which give rise to

---

[2]Plaintiff raises these claims against the County and Robert Houston, but the Eighth Circuit "has squarely held that supervisors may not be held individually liable under Title VII." *Bonomolo-Hagen v. Clay Central-Everly Community Sch. Dist.*, 121 F.3d 446, 447 (8th Cir.1997) (citing *Spencer v. Ripley County State Bank*, 123 F.3d 690, 691-92 (8th Cir.1997) (per curiam)). Therefore, the claims are denied as against Robert Houston.

6

an inference of discrimination. See *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 857 (8th Cir. 2004). If a plaintiff establishes a prima facie case, then the burden shifts to the employer to produce evidence of a legitimate nondiscriminatory reason for its action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993). If the employer succeeds in this burden of production, then the burden shifts back to the plaintiff to prove that the employer's proffered reason was a pretext for intentional discrimination. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000). The ultimate burden of persuasion remains with the plaintiff throughout the case.

"Although 'actions short of termination may constitute adverse actions ⋯', 'not everything that makes an employee unhappy is an actionable adverse action.'" *Montandon v. Farmland Industries, Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (discussing an unlawful retaliation claim in the context of Title VII) (quoting *Smith v. St. Louis University*, 109 F.3d 1261, 1266 (8th Cir. 1997); *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996)). To constitute an adverse employment action, "the action must have some adverse impact" on the employee. *Id.* Defined another way, an adverse employment action must effectuate "a material change in the terms or conditions of ⋯ employment." *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) (discussing adverse employment actions in the context of a retaliation claim brought along with a Title VII claim); see also *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (no prima facie case is made where changes in duties or working conditions cause no materially significant disadvantage to establish an adverse employment action). Indeed, as was noted in *Tipler*, generally, a change in shift is not an adverse employment action. *Tipler,* 2006 WL 1314328 at * 11 (citing cases).

Here, the alleged adverse employment action was a shift change that occurred for approximately six months. As defendants argue, plaintiff did not suffer a loss of pay, benefits, change in job responsibilities, or loss of promotion. Furthermore, the County has given plaintiff his first choice of shifts since July 2005. Because plaintiff did not respond to defendants' summary judgment motion, he has not provided this court with any further allegations of how the temporary shift change produced a material employment disadvantage. Therefore, based on the record before this court, the court finds that like in *Tipler,* the plaintiff has failed to establish any right to a particular shift assignment or that the shift assignment resulted in a tangible change in working conditions. Therefore, plaintiff's claim is dismissed.

IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Filing No. 24) is granted;

2. A separate judgment will be entered; and

3. The Clerk of Court is directed to send a copy of this Memorandum and Order to plaintiff at his last known address.

DATED this 21st day of March, 2007

BY THE COURT:

s/Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge